scUnited States District Court
for the
Southern District of Florida

| | |
|---|---|
| Carlos H. Espinoza and all others similarly situated, Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 20-22873-Civ-Scola ) |
| South Beach Associates, LLC, and Stefano Fritella, Defendants. | ) ) ) |

### **Verdict and Order Following Non-Jury Trial**

      Plaintiff Carlos H. Espinoza, through this Fair Labor Standards Act case, seeks damages from Defendants South Beach Associates, LLC, and Stefano Fritella for their failure to pay him overtime wages during his employment at Social, a restaurant in Miami Beach. (Compl., ECF No. 1, 12–16.) In response to the lawsuit, the Defendants filed a motion to compel arbitration, seeking to compel arbitration and stay the case based on Espinoza's alleged execution of an employee-dispute-resolution agreement with South Beach. (Defs.' Mot. to Compel, ECF No. 6.) In opposing the motion, Espinoza denied ever signing an arbitration agreement or otherwise agreeing to arbitrate any claims against the Defendants. (Pl.'s Resp., ECF No. ECF No. 11.) In light of the parties' disagreement, the Court determined Espinoza had raised a genuine issue of material fact concerning the formation of the purported arbitration agreement and denied the Defendants' motion to compel, without prejudice. (Order, ECF No. 19.) In doing so, and after denying the parties' cross motions for summary judgment, the Court then set the matter for a bench trial on the sole issue of contract formation. (Order, ECF No. 51.)

      The Court held a one-day, non-jury trial, beginning on January 19, 2021.[1] Prior to the trial, the parties submitted a joint pretrial stipulation (ECF No. 54), as well as their proposed findings of fact and conclusions of law (ECF Nos. 55, 56). The Court has carefully reviewed these submissions. The Court also paid close attention to the testimony and evidence presented during the trial. After considering the credible testimony and evidence, and the applicable law, the Court finds Espinoza did sign the arbitration agreement and its

---

[1] The entire trial on this matter was conducted virtually, by videoconference and without issue. This relieved the litigants and many witnesses from the burdens of expensive and inconvenient travel to the courthouse in downtown Miami. The Court highly recommends conducting hearings and nonjury trials using a virtual platform. There are many advantages and few downsides.

associated acknowledgment form, thus establishing the formation of a contract to arbitrate.

### 1. Summary of the Testimony
### A. Demian Maggioni

Maggioni was called as a witness for the Defendants.

Maggioni has worked for two years at Ceviche 105 and has been the corporate operations manager there for the past 14 months. He previously worked as a manager for South Beach Associates at Social, from January 2011 through April 2018. Ceviche 105 is not affiliated with South Beach Associates.

Espinoza was the chef at Social.

Maggioni was manager during the transition at Social to digital/electronic on-boarding employment contracts. Maggioni was trained by Antonio Rizzi on how employees were to fill out the arbitration provision.

Maggioni would open the contract on the computer but the employee would have to input their own personal information and sign documents electronically. This process took about twenty to twenty-five minutes. The employee would have to scroll through each document prior to signing. Maggioni made himself available in case the employees had any questions. Most of the questions of the employees related to how to list their dependents. Maggioni does not recall today the specific language of the arbitration clause.

Maggioni denies that only the new hires were required to sign the arbitration agreement. Maggioni also presented the arbitration agreement to current employees when the new policy took effect in approximately 2015. In his deposition, Maggioni had testified that his only role was to assist the new hirings to fill out the hiring package. Maggioni is certain that new employees signed the forms and, if everything was done correctly, all current employees should have signed the forms as well.

Maggioni used his manager log-in credentials to start the process for Espinoza. Then Espinoza reviewed and signed the documents. Maggioni was not present during the entire time Espinoza was reviewing the documents on the computer but he was available in case Espinoza had any questions. Maggioni does not recall Espinoza asking any questions. Maggioni did not see Espinoza electronically sign the document.

One of the most important parts of the process was to print out and have the employee sign an acknowledgement that he had electronically signed the handbook, dispute resolution, and service-charge distribution documents. Exhibit C is the form signed by Espinoza. Espinoza filled in his name and his

position as "Chef." Espinoza and Maggioni signed the form at the bottom on March 3, 2016.

Exhibit B is the electronic version of the Employment Dispute Resolution form electronically signed by Espinoza.

Espinoza was very familiar with using the office computer. He used it every day. When he started his shift, he would log in the food invoices either every day or every other day. At least once or twice per week, Espinoza would also use the computer to input the kitchen schedule.

Maggioni gave Espinoza's signed acknowledgement form to Rizzi. Espinoza was in financial distress at one point. He was given a loan by the restaurant to be repaid by having monies deducted from his paycheck. Other employees told Maggioni that Espinoza said he was going to sue the company because he was not happy with his hours. Maggioni wanted to make sure the loan receipt signed by Espinoza was kept and Maggioni also placed Espinoza's acknowledgement form in a file.

Mr. Mateo is Maggioni's brother-in-law and Mateo has been a business associate of Fritella for a while. Mateo helped Maggioni get hired by South Beach Associates. Maggioni started in 2010.

### B. Antonio Rizzi

Rizzi was called as a witness for the Defendants.

Rizzi works at 850 Office LLC which manages several restaurants. He is a part-owner of Social.

His companies have used various payroll companies over the years. His present payroll company uses an electronic system. All documents are reviewed and signed electronically. He and the managers were trained in the new electronic system. The forms included an Obamacare waiver form, an I-9 form, and an employment contract.

Rizzi signed a declaration indicating he is the custodian of personnel files for South Beach Associates.

His attorney wanted him to have the employees sign a hard copy of the Obamacare waiver form so he also had them sign a hard copy of the acknowledgement of electronic signatures form.

Espinoza started working for Rizzi at a different restaurant and was later transferred to the Social restaurant. Rizzi is, thus, familiar with Espinoza.

When Maggioni was about to leave his employment with the company, he told Rizzi that he felt Espinoza was going to sue the company and Maggioni gave Rizzi Espinoza's employee file. Rizzi scanned the documents that were in the file.

One of the documents given to Rizzi by Maggioni was an I-9 form that Espinoza filled out, in ink, and signed when he first started working for the company.

According to Rizzi, each employee who had already been hired at the time the new electronic payroll system was implemented was required to electronically review and sign the forms, including the arbitration form. Those same employees also signed a hard copy of the acknowledgement form. Each manager was supposed to scan the hard copy and send to Rizzi. Maggioni kept those forms in his office but never scanned and sent them to Rizzi. When Maggioni left and a new manager took over, the file(s) containing the hard copies of the employees' acknowledgement forms disappeared inexplicably. Thus, only Espinoza's hard copy of his acknowledgement form was provided to Rizzi. But, once Rizzi scanned Espinoza's form he threw away the hard copy. At this time, there are no hard copies of any employee's acknowledgement form.

Espinoza was fired because he came into the restaurant on a day off, walked behind the bar, took a few beers, and walked out.

### C. Douglas Kendig

Kendig was called as a witness for the Defendants.

Kendig works at Vick and Angelo's in Boynton Beach which is operated by Fritella and Rizzi. Kendig has worked for many years with South Beach Associates at various locations and worked at Social as a manager from January 2016 until approximately January 2018. On March 4, 2016, one day after Espinoza signed his forms, Kendig signed electronic documents when he worked at Social including an arbitration agreement. Kendig also signed hard copies of an insurance waiver and an acknowledgement form.

Kendig worked with Espinoza at Social. Kendig did not have any conversations with Espinoza about the employment documents. Espinoza never told Kendig he was going to sue the restaurant.

Kendig was not responsible for explaining the new hiring process to new employees at Social. He does not know what happened to the signed, hard copies of the insurance waiver forms or the acknowledgement forms at Social.

### D. Miguel Emmanuelli

Emmanuelli was called as a witness for the Defendants.

Emmanuelli now works for Vick and Angelo's and prior to that worked at Social with Espinoza from approximately 2011 until 2017. Maggioni was the manager at Social during the time Emmanuelli worked there. Emmanuelli was the night-time chef and Espinoza was the day-time chef.

After he had been working at Social, Emmanuelli signed an employee-dispute document. He does not recall when he signed the document and does not recall signing any other documents. In his deposition, Emmanuelli had testified that he signed the employee documents at the beginning of his employment.

Emmanuelli does recall that Maggioni sat with him at the computer and explained the forms to him before he signed them. Maggioni was with him the entire time he reviewed the forms.

Espinoza never complained to Emmanuelli about how he was treated by the restaurant and never mentioned going to see an attorney. Emmanuelli and Espinoza always spoke to each other in Spanish.

### E. Carlos Espinoza

Espinoza was called as a witness by the Plaintiff.

Espinoza is from Honduras, is a legal resident in the United States, and is forty-seven years old. He worked at Social as a chef from 2013 through 2019.

Espinoza never threatened to sue the company during the time he was working there.

Espinoza was never asked by Maggioni in 2015 or 2016 to use a computer to review and sign employment documents.

Espinoza was shown Exhibit 1, a printout of an Employment Resolution form with his name and electronic signature. He testified he never reviewed that document on a computer and never electronically signed the document. He does not know how to use a computer. He was never told about arbitration.

Espinoza was shown Exhibit 2, the signed Acknowledgement Form, and testified it is not his handwriting and not his signature.

Espinoza was shown Exhibit K, his answers to interrogatories, which contain his initials on each answer. The "E" written on his initials appears to be different from the "E" written three times on the Acknowledgement Form.

Espinoza testified that he never sat at the computer with Maggioni to input the invoices for the food costs. Another chef who worked in the afternoon inputted the invoices. The other chef was given a tablet to use to input the invoices.

Espinoza was shown Exhibit F, his permanent resident card with his signature. He agreed the signature on the permanent resident card is his signature. The signature includes a big loop around most of the letters within the signature. He only completed sixth grade in Honduras and never learned how to sign his name. His permanent resident card was the first time he had signed any documents.

Espinoza was shown Exhibit E, his I-9 form, and admitted it contained his signature. He had previously signed an affidavit denying that it was his signature.

### F. Alberto Pomarica

Pomarica was called as a witness for the Plaintiff.

Pomarica worked at Social with Espinoza for four years, starting approximately 2014. He stopped working at Social at the end of 2018.

Pomarica worked the salad line from 9:00 a.m. to 4:00 p.m.

Damien Maggioni was the manager for the first three years Pomarica was there and another manager took over during Pomarica's last year at Social.

Damien never asked him to go on a computer and review and sign documents and never told him anything about any arbitration agreements. Pomarica was only given an employment application.

Pomarica was shown Exhibit 9, a printout of an Employment Resolution form with his name and an electronic signature of him. Pomarica claims he never saw the form and never signed the form electronically.

Espinoza never complained about his work and never told Pomarica he was going to sue the company.

Pomarica did not get along well with Maggioni. Maggioni was the kind of person who pressured you a lot at work. Also, Pomarica signed up to work the salad line and Maggioni was always asking him to do other work in addition to his salad work.

### G. Alberto Everaldo Martinez Julien

Julien was called as a witness for the Plaintiff.

Julien has worked for many of South Beach Associates' restaurants. He first worked at Carlyle in 2015, a restaurant of South Beach Associates, and met Espinoza there. Julien was a food-prep and line cook. He worked six days per week from 8:00 a.m. until 5:00 p.m. Julien and Espinoza always spoke to each other in Spanish.

Julien remembers that while he worked at Carlyle in early 2016 or late 2015, he went into an office and entered his social-security number but he does not remember signing any documents. Julien does not remember seeing anything about arbitration in the paperwork and no one ever mentioned that word to him.

Julien later worked at Social while Maggioni was the manager. He did not sign any employment agreements while he worked at Social.

The only thing Julien remembers signing is a form having to do with insurance/Obamacare.

Julien was shown Exhibit 10, a printout of an Employment Dispute Resolution form which indicates it was electronically signed by Julien on March 2, 2017. Julien does not recall ever seeing or electronically signing the form.

All the employees, including Espinoza, complained about the work conditions at the restaurant but he was not a leader of the complainers. Julien complained to Espinoza that he believes he is owed money by South Beach Associates.

### H. Arlex Torres

Torres was called as a witness by the Plaintiff.

Torres worked at Social with Espinoza from early 2017 until late 2017. He worked total of seven months. Torres was a food runner at the restaurant. The waiter takes the order and he delivers the food to the table.

Torres only knows the manager was Italian but does not know his name.

When Torres started working, he was placed on probation. He does not remember ever going on a computer and signing documents electronically. He was asked if he knew how to use a computer and he told them he did not. After a few days of working and he had finished his probationary period, he was given documents to sign by the manager. He has no idea what documents he signed; he just knows he signed a bunch of documents. He had just arrived in the country. He did not sign documents relating to arbitration and no one ever mentioned arbitration to him

Espinoza never complained about the conditions of work at the restaurant.

Torres left the job because he was fired for arguing with the manager. He was upset about being fired because his wife was pregnant at the time.

### I. Elizabeth Cruz Evans

Evans was called as a witness for the Plaintiff.

Evans works for 850 Office which manages several restaurants owned by Fritella. Social is one of the restaurants owned by Fritella.

Evans does the accounting and speaks fluent Spanish and English.

Evans has worked with Rizzi for over ten years. Rizzi never told her that the "wet" signatures of the employees at Social were missing. She does the accounting and the only documents she works with are invoices.

Evans has nothing to do with payroll. She has heard of an arbitration agreement, but she has nothing to do with arbitration agreements. She was never asked to translate employment documents back in 2015 and 2016. She has heard Rizzi speaking to managers that all the employees had to sign the arbitration agreements but she has no idea if they were referring to written agreements or electronic documents.

All HR documents are stored in the office of the manager at each of the restaurants.

### 2. Findings of Fact

Espinoza worked as a chef at Social, a restaurant owned by South Beach, from 2013 to 2019. South Beach had utilized several different payroll companies over the years. Between late 2015 and early 2016, South Beach hired a new payroll company and implemented a computerized onboarding process for its employees. During this time, Maggioni was the general manager at Social.

The onboarding process involved logging both newly-hired and existing employees into the human-resources work-cycle program. As part of that process, each employee would have to input his or her basic information and then scroll through a number of electronic documents, including South Beach's employee-dispute-resolution policy. Maggioni would open the program on the computer in his office and then the employee would enter his personal information to access the documents. Maggioni explained to each employee that he was available to answer any questions they had or assist them in the process. He was not physically present with the employee at the computer during the entire process but was in the restaurant. The system required the employee to scroll through each document before the employee could electronically sign that document. Once the employee scrolled through and signed all the documents, Maggioni would have the employee sign, in ink, a hard copy of an acknowledgment form certifying that the employee had read and electronically signed the computerized documents. Each restaurant manager was responsible for maintaining the hard copies of the acknowledgement forms and the managers were supposed to scan and forward digital copies of the forms to South Beach within a few days of the signing.

Maggioni assisted Espinoza in migrating to the new system on March 3, 2016. Espinoza went into Maggioni's office. Maggioni initiated the computer program for Espinoza and explained the process to him. Espinoza then inputted his personal information and reviewed the documents online. Maggioni was not present the entire time as Espinoza went through and electronically signed the documents, including the dispute-resolution

agreement. Maggioni went about attending to the restaurant but told Espinoza that if he had any questions or needed any help to let him know. Espinoza did not ask any questions. Nor did he ask for help. Once Espinoza completed the electronic reviewing and signing process on the computer, Maggioni presented him with a receipt-acknowledgment form, which itself lists the dispute-resolution agreement as a document that was presented by the program and which the signer agrees to comply with. Maggioni was present when Espinoza signed the hard copy of the acknowledgement form. In court, Maggioni confirmed that the signature on the acknowledgment form is Espinoza's.

Maggioni specifically recalled going through the program with Espinoza because Espinoza had received a loan from the restaurant and because Maggioni suspected Espinoza might one day sue South Beach based on gossip among the other employees. Because of his concerns, Maggioni gave Espinoza's complete paper file to Rizzi. Once Rizzi had possession of the paper file, he scanned and uploaded the documents and then threw away the hard copies of the documents.

Maggioni no longer works for South Beach and has no motive to perjure himself over a run-of-the-mill FLSA case. His memory was clear and specific of the relevant events and his testimony was corroborated by other credible witnesses.

Although Espinoza denied that he electronically signed the dispute resolution agreement and denied that the signature on the acknowledgment form is his, he had previously signed an affidavit in this case denying a signature on an I-9 form was his but later admitted it was, in fact, his signature. The Court compared the signature on the acknowledgement form with Espinoza's signatures on his I-9 form and on his permanent resident card and the three signatures are generally similar. But the Court's determination that Espinoza signed the forms electronically and by hand is based upon the testimony of the witnesses, not because of its amateur handwriting analysis.

Although it is troubling that Espinoza's is the only hard copy acknowledgement form from the Social that is still in existence within the company's records, the greater weight of the evidence establishes he did sign the forms electronically, including the dispute resolution agreement. The greater weight of the evidence also establishes Espinoza did sign the hard copy of the acknowledgement form.

### 3. Conclusions of Law

Whether an arbitration agreement exists at all is "simply a matter of contract." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). "Such a determination rests on the intent of the parties." *Seaboard Coast Line*

*R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir. 1982). For this, the Court must apply "ordinary state-law principles that govern the formation of contracts." *Am. Exp. Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997). Since the dispute resolution agreement and the acknowledgment form were signed and executed in Florida, neither party denies that Florida law governs this dispute. *See Rodero v. Signal Fin. Co. LLC*, 365 F. Supp. 3d 1263, 1265 (S.D. Fla. 2018) (Altonaga, J.) (cleaned up) ("As Plaintiffs' FLSA action involves an employment relationship in Florida and the contracts are alleged to have been signed and executed in Florida, Florida law governs whether valid arbitration agreements exist between the parties.").

    To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove by a preponderance of the evidence: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). And "the goal of Florida law vis-à-vis contract formation is to effectuate the parties' intent." *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012). Here, Espinoza's sole arguments against formation is that he (1) did not electronically sign the dispute-resolution agreement, (2) did not hand sign the acknowledgement form, and (3) was wholly unaware of the existence of any arbitration agreement. In other words, Espinoza denies the offer and acceptance elements of contract formation.

    Because the Court finds Espinoza did, in fact, both electronically sign the dispute-resolution agreement and hand sign the acknowledgment form, reflecting his agreement to arbitrate and acknowledging he read and understood the terms of the agreement, the Court concludes the parties formed a contract in which Espinoza agreed to submit his claims to arbitration. The Defendants may therefore, after thoroughly conferring with Espinoza and his counsel, renew their motion to compel arbitration. The Defendants must file their motion, or a notice that they do not intend to do so, on or before **January 29, 2021**.

    **Done and ordered** in Miami, Florida on January 20, 2021.

Robert N. Scola, Jr.
United States District Judge